Good morning, your honors, counsel, deputies. May it please the court, my name is Lee Johnson and I'm here to argue for Marlon Winborn who is appealing from the denial of his motion to suppress evidence discovered during an investigatory stop of his vehicle in Minneapolis. I've reserved two minutes for rebuttal, but, and so what I'd like to do with the time I have remaining is focus on United States v. Mosley because that case is, was relied on by the district court and both Mr. Winborn and the government are citing that as, I guess, the dispositive case, at least on the issue of the investigatory stop. If I can just summarize the facts of Mosley because these facts are I, it appeared to know that the bank was being robbed, sees two men wearing hoods fleeing from the bank. He loses sight of them, goes around the block because he's going to follow them. He doesn't see them, but he sees a gray Taurus leave the area of the bank. And what he reports to, I think through the bank to the, that eventually goes to the police, is that the gray Taurus was in the vicinity of the bank. It left moments after the bank robbery and it was the only car that left. And then what happened was he follows the car and when he sees it, there's a woman in the car, not two men. So he reports, you know, I'm not certain this is the car. Now, in the meantime, a patrol officer is being, was told there's a gray Taurus that is possibly involved in the bank robbery and it's coming down this road and it's coming in this direction, pulls it over, searches the car. The two bank robbers are in the trunk. And so what Mosley held was, is that even though there wasn't a, quote, definite or certain connection because the witness was uncertain, the fact that the car, that the witness saw a car leaving the bank at the time of the bank robbery was on top of everything else, the totality of circumstances added up. Now, the district court in Mr. Winborn's case relied on Mosley. And it's, and it said that the police officers, and I'll quote from this, had reasonable suspicion to stop Mr. Winborn based on information obtained from a 9-1-1 caller placing the vehicle near the scene of the shots fired incident, even though the caller did not explicitly connect the vehicle to the gunfire. Now, there's some problems with this. The first is, is that the court is acknowledging that all the 9-1-1 caller told police was that the red Saturn was at the scene of the offense or the scene. And what we mean by scene, there's a big difference between the scene in Mosley, which is a bank robbery, and the cars driving by it, and the scene in Mr. Winborn's case where it's, where what the caller heard the gunshots and then saw the car. We don't know where the gunshots actually were. So there's a big difference there. But the main difference is, is that the caller in Mr. Winborn's case saw nothing else. Whereas in Mosley, we know that the caller saw the people flee and the gray car leave moments after the that merely being at the scene of the offense or that a witness seeing you at a scene of a crime near the scene of a crime is enough to establish reasonable suspicion. And Mosley does not dispense with the requirement that police must have a particular, particularized and objective factual basis, which allows a reasonable offense to believe that a vehicle or a person is involved with a crime. And that in Mosley was the fact that the case, the witness did see a vehicle leave the scene, but it wasn't Mr. Winborn's car. It was a white VW Passat which took off. The red Saturn was just parked there. And as we know from the body-worn cameras, it was just among many cars that were parked on the street near the scene. You know, so, Your Honor, with regard to the reasonable suspicion, if the Court finds that reasonable suspicion exists in this case, based and first of all, Mosley doesn't support it all. But to find reasonable suspicion would permit police to stop a vehicle any time a witness mentions a person. It could be their appearance. It could be what they have on their bumper sticker. Such a stop is not permitted by the Constitution, and it's not permitted by Mosley or any other cases that this Court has cited. That may be, but if you think about it, this car is not moving. It's stopped. It's parked. It's sitting there, right? The red Saturn. Yeah. And the red Saturn. And, you know, in the world, you know, we have got cases that say that, you know, a police officer can just be walking down the street and they can approach a pedestrian standing there. It's an incidental contact if you just walk up to them and say, how's it going? You can just approach the car, you know. And so, there's no Fourth Amendment activity if you just stop your car and walk out there and are just going to see what's going on, right? I mean, that's, you don't need reasonable or articulable suspicion to do that, do you? That's correct, Your Honor. All right. And so, they get out of the car, they start walking towards the car, and then there's a statement that's made, you've got the wrong vehicle, you've got the wrong vehicle, and it kind of deteriorates from there, right? Well, Your Honor, I But can the officers, can't they just walk up and say, been gunshots here, do you know anything, did you see anything, you know, and what I'm trying to figure out is when exactly is there a sufficient interference with the occupants of the vehicle to actually indicate that a stop has been made as opposed to just kind of, really, you've got just this sort of, you know, law enforcement wandering around, you know, not quite aimlessly, but just going up and asking people, what do you see or what haven't you seen? And your argument, or excuse me, Your Honor, the government did argue the plain view exception should apply in this case. And the reason why it doesn't apply in this case, and I addressed this in my brief, but what happened was it wasn't as simple as the officers approaching this car in a friendly manner. What the officers did is they pulled up right behind it, they shined the takedown lights on the car, and one officer got out of the car holding her weapon, and the other officer got out of the car. And it wasn't just an unprompted remark. What officers, you know, after doing all this. Was it blocking the departure? No, it was to the side. So then it wasn't a seizure of the car. Your Honor, not at that point. Not at that point. But what happened was. It's no different than walking up to a parked car with a, I mean, I've had one of those cases. No, no. The net of effect is somebody, he was working under the hood, the hood was up, and there's the contraband. The glass case, yeah. But, Your Honor, if it had stopped there, I would agree with you. But the problem was is that's not what happened. Officer Sporny and his partner get out of the car, they flank the car, and it isn't an unprompted remark. Sporny clearly stopping the car says, what's up, guys? Kind of a flippant, you know, maybe, I don't know what type of question. And Mr. Winboard's response was, you have the wrong car. Because he had heard the gunshots, too. At that point, the officers approached the car. Now, if that's all they did and they just walked up. But they said, put your hands where we can see them. They were screaming at the people. Put your hands where we can see them. They had their guns drawn, and then they told Mr. Winboard to put his hands. So it was clearly a seizure right away. It wasn't a friendly. Now, I agree, Your Honor, if they had walked up to the car, maybe even shown a flashlight. But they wouldn't have seen the contraband because if they hadn't told the officers, or excuse me, the occupants, you know, put your hands on the, you know, they wouldn't have never found the marijuana. If they hadn't shined the light on his lap and hadn't asked him for his ID, they would have never found it. Does something change if you're in a neighborhood where you know shots have recently been fired? A police officer approached. The car has been identified as being in the general vicinity of the shooting. Do you have to wait until somebody produces a gun and shoots at you before you can say, could you put your hands where I can see them? I mean, it seems to me that that's not necessarily anything other than the officer being concerned for his safety, his partner's safety, and the safety of others in the vicinity. No, I'm not saying it's unjustified, but I am saying it's a seizure. And I think with regard to the seizure as soon as you say it. What's your best case for that? For the seizure? The best case citation-wise, I would say probably. I would say United States. Let's see. Probably United States v. Mendenhall and United States v. Peoples. And they're both cited in my brief at page 11 and 12. I know Mendenhall, Supreme Court. Where's Peoples? Yeah. 8th Circuit, 925F, 3rd, 2nd, 1082. It's on page 11 of my main brief. I remember a case where they stopped two young people on a bridge in Minneapolis. And there was some reason to fear for officer safety. And so they did something more than just question with their hands in their pocket. And it was not a seizure. I'm not familiar with that case. That was quite a while ago. Your Honors, I'm out of time unless I have any more questions. Thank you. Mr. Evans. Thank you, Your Honor. May it please the Court. Matthew Evans, Assistant United States Attorney on behalf of the government. The district court did not err in concluding that the stop and seizure of appellant Winborn was supported by reasonable suspicion. Accordingly, this Court should affirm the district court's denial of the motion to suppress and affirm the judgment of conviction. Counsel, is the government arguing that this was not an investigatory stop? Absolutely not, Your Honor. And the government agrees with appellant's position that this was a stop at the moment the officer gave a command, a show of authority, and Mr. Winborn submitted to that show of authority by putting his hands on the wheel. I think Hodari D. sets this forth as well as Peoples, which is a circuit case. And I think it is clear that there's the show of authority, put your hands on the steering wheel, said assertively, and obviously these are known officers. And Mr. Winborn does almost immediately, you know, within moments, seconds, puts his hands on the wheel. So the government absolutely agrees that this is an investigatory stop. And so the issue is at that moment when Mr. Winborn submitted to the show of authority, were the officers acting reasonably? Did they have reasonable suspicion based on everything that they knew at that time to conduct at least a brief investigatory stop? And then obviously we get into the marijuana and the struggling later on. But I think the crux of this is whether there's reasonable suspicion at the moment Mr. Winborn submits to that show of authority. Your brief addresses the question of whether there was reasonable suspicion that the occupants were engaged in or had committed a crime as well as reasonable suspicion to stop the vehicle. Are you conceding you have to show both? I'm not sure I understand the question. Well, I thought the focus was whether there was reasonable suspicion to stop the vehicle. Correct. Is that not enough? No, that's correct. But I think especially in this case where the car is stopped, and part of Appellant's argument is there wasn't Engine was running, right? It's unclear whether it was or it wasn't, but it was clearly parked, you know, on the side of the road. It wasn't in the roadway. And I don't believe the record is exactly clear. The officer at least in the moment says, you know, I think shut off the vehicle and give me your keys. But the officer wasn't exactly clear as to if the car was actually running or not. Is it enough that they had enough to approach a parked car and ask the occupants to, you know, have you got a few minutes and can we talk? Correct. That's right. And then the occupants can say no. And then now you have to have more. In that hypothetical, that's correct, Your Honor. If it is truly consensual, do you have a moment to talk? No, it's not consensual. When a cop approaches you on Nicollet Avenue and says you got a minute, I want to talk to you, you know, and there's been a shooting nearby, and, you know, you're near it. And you can say, no, I don't want to talk to you and walk away. Yes. Now there has to be suspicion as to that person. Yes, exactly. If the officer wants to then continue it and say, no, you need to talk to me, a show of authority, and then the person actually stays there and talks, then we do have a stop. And do you, if it's an officer's safety situation to even approach the person, does that add to what the government must prove to justify the interchange? No, Your Honor. I don't believe that officer safety is required, certainly in this instance, to find reasonable suspicion. I think there's We had a case where it was an approach to talk, but before talking, they patted down and frisked. And we said, no, that went too far. You didn't have suspicion slash cause to do that in these circumstances. But in other circumstances, you might. Right, where there's some indication that the individuals that are being approached and stopped have some, that the officers have some objective basis to make that stop. They didn't order them out of the car initially. They just approached, but they approached, you know, with their hands on their. . . They were showing authority. Fearing the worst, let's say. Yes. With nothing other than the situation. Correct. Which gave them a reasonable basis to approach the car. Well, I think the reasonable basis to approach this particular red Saturn is really focused on that third call. The caller who. . . Right, right. Yeah. Yeah, so. . . I fear I'm missing the. . . The appellant seems to be arguing that there's not reasonable suspicion based on a 911 call unless the caller has personally witnessed a very clear crime and knows where the suspects are located. Is there any basis for that in our precedent? No, Your Honor, and I think the precedent. . . There's two particular cases that specifically address this issue where appellants in those cases asserted the same argument and the court said, no, that is not required. That's the Mosley case and the Roberts case. In both of those cases, the witnesses are relying on inferences. There's a lack of certainty but reasonable inferences that they report to the police, that they report to 911 and the dispatch reports to the officers on this scene. So in both. . . In Mosley, for example, the key witness here, the person who reports the silver gray Ford Taurus, had several inferences. There's no indication that that witness knew a bank robbery occurred. He was driving by outside. But he sees obviously suspicious things, two men in hoods running in the direction away from a bank and also makes the inference that those two men got in the Taurus. The witness didn't see them get in the Taurus at all, but assumed, made a reasonable inference, there were two men running, then I couldn't see them, and now all I see is a Taurus driving away. The inference is that they got in that car. And obviously, in that case, the witness follows up and doesn't see the suspects in the car and expresses uncertainty as to whether the silver Taurus was involved. Roberts, I think, is the most factually analogous case and is, again, a case where this Court was presented with the same argument and this Court rejected it. In that case, like this case, it was a shooting with witnesses who observed, who in Roberts, they observed a shooting, they saw a shooter, and they also see a car, a black Chrysler, driving away. No one says, and I believe they even say, we don't know where the shooter is, but we saw a black Chrysler drive away. And I believe because the focus is on what the officers knew, not what anyone reports, but what the officers know in that moment, all that the officers were told was to be on the lookout, or that there was a shooting, and to look out for a black Chrysler, which they find, I believe, seven blocks away, the opinion says moments later. Officers conduct an investigatory stop of the vehicle, and they, you know, the facts change from there. But the focus is whether there was reasonable suspicion when nobody connected the shooter to the car, which is what happened here. I think the officers showing up in the heat of the moment, and they arrive five minutes after the first report. They have an identified and accountable caller, this third caller, who provides specific information and asserts firsthand knowledge, and specifically identifies two cars. At least in the IDR, what the officers were looking at, it's not specifically articulated what exactly the crime, the suspected crime is, or how exactly those cars are related. But obviously, the officers are making a reasonable inference. If this person identifies these two cars, they saw, you know, they had, it's an inference that those cars are involved. And the officer testified exactly that, that when they show up with a tip for a specific car, that often that car is, in fact, involved based on their later investigation. If there are any further questions, otherwise, thank you, Your Honors. Thank you. The case has been well briefed and argued, and the Fourth Amendment always presents challenging issues, and we'll take it under advisement. Does that complete the morning's arguments? Yes, Your Honor. Then I believe we will be in recess until 9 o'clock tomorrow morning. Thank you.